**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**WALKER & SONS, INC.**                **CIVIL ACTION NO. 6:09-cv-1822**

**VERSUS**                             **JUDGE HAIK**

**PUNCH YA DADDY, LLC et al**          **MAGISTRATE JUDGE HILL**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>TABLE OF CONTENTS</u>

**Factual Background**............................................................................................ 1

**Introduction: Separate but parallel state and federal remedies**................................. 2

**State-law remedies** ............................................................................................ 4

**Federal remedies**............................................................................................ 11

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**:

*Gulf Offshore Oil Co. v. Mobile Oil Corp.*, 453 U.S. 473, 477-78 (1981) .......................... 3

*United Mine Workers of America. v. Gibbs*, 383 U.S. 715, 725 (1966) ............................... 3

*Kewanee Oil Co. v. Bicron Corp.,*  416 U.S. 470 (1974) ........................................................ 3

*Golden Door, Inc.  v. Odisho*, 646 F.2d 347 (C.A. 9, 1980) ................................................. 3

*Prudhomme  v. Procter & Gamble Co,*, 800 F.Supp. 390, 395 (E.D. La., 1992) ..... 3, 5, 14

*California. v. ARC America Corp.,* 490 U.S. 93, 105 (1989) ................................................. 4

*Gulf Coast Bank v. Gulf Coast Bank & Trust Co.,* 94-2203 (La. 4/10/95), 652 So.2d 1306,
        1315 ............................................................................................................. 4, 5, 7

*California v. ARC America Corp.*, 490 U.S. 93, 105 (1989) ................................................. 5

*Chinchuba Institute v. St. Tammany Parish School Board*, 95-0419 (La.App. 1st Cir.
        11/9/95), 664 So.2d 1230, 1233 ................................................................. 5, 6, 8

*Seafood Restaurant Services, Inc.  v. Bonanno*, 95-0058 (La.App. 1st Cir. 119/9/95), 665
        So.3d 56, 59 ...................................................................................................... 5, 7, 8

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 791 (C.A.5, 1983) ............ 6

*Aloe Crème Laboratories, Inc. v. Milsan, Inc.*, 423 F.2d 845 (C.A. 5, 1970) ............ 6 (FN2)

*Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.* ......................................................... 7, 9

*A. Cusimano & Co. v. Olive Oil Importing Co.,* 38 So. 200, 202 (La. 1905) ...................... 8

*Guillot v. Wagner*, 98-840 (La.App. 5th Cir. 2/10/99), 731 So.2d 335, 337 ......................... 8

*Paddison Builders, Inc. v. Turncliff*, 95-1753 (La.App. 1st Cir. 4/4/96), 672 So.2d 1133,
        1136 ....................................................................................................................... 9

*General Motors Acceptance Corp. v. Daniels*, 377 So.2d 346 (La. 1979) .......................... 9

*Bayer Corp. v. Custom School Frames, L.L.C.*, 259 F.Supp.2d 503, 510 (E.D.La., 2003)
        ............................................................................................................................ 10

*Lafreniere Park Foundation v. Friends of Lafreniere Park, Inc.*, 97-152 (La.App. 5th Cir. 7/29/97), 698 So.2d 449,452 ............................................................................ 10

*Camp, Dresser & McKee, Inc. v. Steimle & Associates, Inc.*, 94-547 (La.App. 5th Cir. 2/15/95), 652 So.2d 44 ........................................................................... 10

*Ouachita Parish Police Jury v. American Waste and Pollution Control Co.*, 606 So.2d 1341 (La.App. 2nd Cir. 1992), writ denied, 609 So.2d 234 (La. 1992), cert. denied, 508 U.S. 909 (1993) ......................................................................... 10

*Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Bd.*, 586 So.2d 1354, 1359 (La. 1991) ................................................................... 10

*Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (C.A. 5, 1980) ................................... 11

*Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1220 (C.A. 9, 1996) ................ 12

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (C.A. 5, 2009)............. 13

*Board of Supervisors for Louisiana State University v. Smack Apparel Co.*, 550 F.3d 465, 475-6 (C.A. 5, 2008) .................................................................. 14

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F. Supp. 366, 373 at FN2 (S.D.N.Y., 1979) .............................................................. 14

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001) ....................... 15

*Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (C.A. 5, 1989)............. 15, 16

*Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763 (1992) ........................................................ 15

*Berg v. Symons*, 393 F.Supp.2d 525, 553 (S.D. Tex., 2005) ............................................... 15

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000)...................15 (FN6)

*Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (C.A. 5, 1999) ..................................... 16

*Humana Inc. v. Avram A. Jacobson, M.D.*, 804 F.2d 1390 (C.A. 5, 1986) ........................ 17

*Petro Franchise Systems, LLC v. All American Properties, Inc.*, 607 F.Supp.2d 781, 801-802 (W.D. Tex., 2009).......................................................................... 17

**<u>Statutes and Rules:</u>**

LSA-R.S. 51:211(A) ................................................................................................ 4

LSA-R.S. 51:223.1 ............................................................................................... 5, 7

Louisiana Code of Civil Procedure Art. 3610 ................................................... 9, 11

LSA-R.S. 51:1409 ................................................................................................. 10

LSA-R.S. 51:411(E) .............................................................................................. 10

15 U.S.C. 1057(b) ................................................................................................. 11

15 U.S.C. 1057(c) .........................................................................................11 (FN4)

15 U.S.C. 1115(a) ................................................................................................. 12

15 U.S.C. 1125(c)(1) ............................................................................................ 14

15 U.S.C. 1125(a)(3) ............................................................................................ 15

15 U.S.C. 1125(c)(4) ............................................................................................ 15

Federal Rule of Civil Procedure 65(c) .................................................................. 17

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**WALKER & SONS, INC.**                    **CIVIL ACTION NO. 6:09-cv-1822**

**VERSUS**                                 **JUDGE HAIK**

**PUNCH YA DADDY, LLC et al**              **MAGISTRATE JUDGE HILL**
_____

## MEMORANDUM IN SUPPORT OF
## APPLICATION FOR PRELIMINARY INJUNCTION

    **May it Please the Court**:


    **Factual Background**

    Plaintiff, **Walker & Sons, Inc.** ("the Walkers") began selling their family-recipe Cajun powdered seasoning under a homemade label reading "slap your mama" in 1996, at a convenience store along Louisiana state Highway 29. Plaintiff first sold Slap Ya Mama Cajun Seasoning, labeled with its distinctive chili-peppers logo, at the Smoked Meats Festival in Ville Platte in June 1998.

    In February 2008, the Walkers registered with the Louisiana Secretary of State several trade names reflecting their prior use in commerce of the words "Slap Ya Mama" and "Slap Ya Mama Cajun Seasoning." They also registered several "Slap Ya Mama" chili-pepper product labels as trade marks with the Louisiana Secretary of State, including "Slap Ya Mama" and "Slap Ya Mama Cajun Seasoning."

    One year later, defendant **Kirby Falcon, Jr.** organized **Punch Ya Daddy, L.L.C.** Punch Ya Daddy filed in May 2009 for registration of the trade name "Punch Ya Daddy" with Louisiana's Secretary of State.

The Walkers first became aware of Mr. Falcon's imitation seasoning mix when asked by customers about "their new product." Consumer confusion caused by Punch Ya Daddy's product is not only understandable, it was inevitable and apparently intended: Defendants' logo and packaging (Rec. Doc. 7-1, p. 11) is clearly a copy of and is intended to evoke the Walkers' label (Rec. Doc. 7-1, p. 9).

The most obvious duplication is the "Punch Ya Daddy" logo, complete with chili peppers: Mr. Falcon has (in a slightly different font) replaced "slap" with "punch," and changed "Mama" to "Daddy," in a manner clearly calculated to associate his product with the Walkers'. Defendants also copied the Walkers' repeating-name motif at the label's top, replacing Plaintiff's name with "The Falcons" and replacing the outline of Louisiana with chili peppers. It is hard to imagine, comparing the two side by side, that Mr. Falcon could have drawn up his package's label without a copy of the Walkers' product packaging in hand.

Once the Walkers had become aware of Mr. Falcon's imitation product (by way of the actual confusion caused in the marketplace), undersigned counsel wrote to Mr. Falcon by certified mail on July 17, 2009 requesting that he stop trading on a name and label design clearly intended to evoke the Walkers' product. He refused, leading to Plaintiff's suit in state district court.

**Introduction: Separate but parallel state and federal remedies**

Plaintiff's initial choice of a state-court forum was permitted by the the well-established principle of concurrent state-court jurisdiction: "state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to

the contrary or disabling incompatibility between the federal claim and state-court

adjudication." *Gulf Offshore Oil Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78 (1981).

Now, all the Walkers' claims having been removed to this Court, their grounds

for injunction may all be tried together in the exercise of the federal courts' pendent

jurisdiction: "if, considered without regard to their federal or state character, a plaintiff's

claims are such that he would ordinarily be expected to try them all in one judicial

proceeding, then, assuming substantiality of the federal issues, there is power in federal

courts to hear the whole." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725

(1966).

Infringement and dilution of service marks is an area of the law where state and

federal concurrent claims coexist peacefully: since the "Lanham Act contemplates a

continuing role for state law in trademark protection," "Pre-emption, Extraterritoriality,

and the Problem of State Anti-dilution Laws," 67 Tul.L.Rev. 1, 11 (November 1992), the

"Supreme Court has shown extreme reluctance to find state trade regulation pre-empted."

*See, e.g., Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974) (state trade-secret law

not in conflict with, and not pre-empted by, federal patent law); *Golden Door, Inc. v.

Odisho*, 646 F.2d 347 (C.A. 9, 1980) (state may enforce remedies supplemental to, and

more extensive than, federal trademark protections).

Although "the requirements for trademark infringement and unfair trade practices

under [Louisiana] law mirror those of the Lanham Act," *Prudhomme v. Procter &

Gamble Co.*, 800 F.Supp. 390, 395 (E.D.La., 1992), Plaintiff's state and federal claims

for injunction are separate and separately actionable. "[S]tate causes of action are not

pre-empted solely because they impose liability over and above that authorized by

federal law," *California v. ARC America Corp.*, 490 U.S. 93, 105 (1989). Accordingly, Plaintiff addresses each sovereign's remedies in turn.

### State-law Remedies

*Dilution (including infringement) gives rise to injunction claim*

For purposes of state law, a "trademark" is "any work, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others," LSA-R.S. 51:211(A).

Plaintiff notes for clarity that, in keeping with Louisiana jurisprudence, its discussions of state law encompass both "trade marks" and "trade names." According to the Louisiana Supreme Court, "the term 'trade name' is applicable to the particular *business* and its good will, and 'trademark' is applicable to the *goods* to which it is affixed… [T]he difference, however, is not generally material because the law affords protection against appropriation to both, under the same fundamental principles." *Gulf Coast Bank v. Gulf Coast Bank & Trust Co.*, 94-2203 (La. 4/10/95), 652 So.2d 1306, 1315 (emphasis in original).

The words "Slap Ya Mama" and its derivative "Punch Ya Daddy," without other adornment, are trade *names*; those words as displayed and used in combination with various graphical elements on the parties' labeling compose trade *marks*. The Walkers claim rights in, and seek injunction against, Defendants' use both of the trade name "Punch Ya Daddy" and the trade mark or marks represented by their labeling.

Louisiana's anti-dilution law provides for injunctive relief against ongoing infringement when there is "[l]ikelihood of injury to business reputation or of dilution of

4

the distinctive quality of a mark or trade name," regardless of whether that mark or name is registered. LSA-R.S. 51:223.1. According to the Eastern District of Louisiana, "the anti-dilution statute protects a mark based upon its strength… such strength can be demonstrated by showing a mark to either be distinctive or to have acquired a secondary meaning." *Prudhomme, supra*, 800 F.Supp. at 395.

As its text indicates, LSA-R.S. 51:223.1 requires a threshold showing "of infringement… or… unfair competition…" Since a mark or name's "strength" – that is, inherent distinctiveness or distinctiveness acquired through secondary meaning – is a required element of infringement as well as a necessity for injunction against dilution, Plaintiff will address it below, along with the other elements of infringement.

Under Louisiana law, "the primary issues in a trade name infringement case are: (1) whether the party seeking the injunction has a protectable proprietary right in the name it seeks to exclude others from using; and (2) if so, whether there has been an infringement of that right." *Chinchuba Institute v. St. Tammany Parish School Board*, 95-0419 (La.App. 1st Cir. 11/9/95), 664 So.2d 1230, 1233.

Finding a "protectable proprietary right" is, in turn, a two-part inquiry: first, "actual use of a mark or name, or, in other words, priority of appropriation, gives rise to a protectable proprietary interest in the mark or name." *Gulf Coast Bank, supra*, 652 So.2d at 1313.[1]

Second, "the trademark or trade name must be distinctive, either by being inherently distinctive or by having acquired distinctiveness through secondary meaning." *Seafood Restaurant Services, Inc. v. Bonanno*, 95-0058 (La.App. 1st Cir. 11/9/95), 665

---

[1] Louisiana law does not allow registration to precede use of a mark, permitting only a person "who adopts and uses a mark or name" to register. LSA-R.S. 51:214(A).

So.3d 56, 59. "Louisiana courts and federal courts have generally divided trademarks and trade names into four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful." *Id.*

Applying those parallel federal classification guidelines, the Fifth Circuit Court of Appeals described a "suggestive" name or mark as one which "suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services." *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791 (C.A.5, 1983). "Arbitrary or fanciful" names or marks "bear no relationship to the products or services to which they are applied." *Id.* According to the *Zatarains* panel, "[l]ike suggestive terms, arbitrary and fanciful marks are protectable without proof of secondary meaning." *Id.*

Plaintiff respectfully submits that its name "Slap Ya Mama" and the associated mark or marks are "arbitrary and fanciful," since the words read literally offer no hint of the product's nature. At the very least, the Walkers' trade name and marks are "suggestive" of the seasoning's flavor and intensity. In either case, "Slap Ya Mama" and its labeling are protectable without proof of secondary meaning; therefore, Plaintiff's proven use of them in commerce gives rise to a "protectable proprietary right" in their use. *Chinchuba, supra*, 664 So.2d at 1233.[2]

---

[2] Oddly, Defendants' Memorandum in Support (Rec. Doc. 12) argues that "Slap Ya Mama" is either descriptive or, at best, suggestive. If Plaintiff's mark were somehow inherently descriptive of food seasoning, and so were Defendants' phrase "Punch Ya Daddy," neither would be entitled to trademark protection at all without having acquired secondary meaning in the minds of consumers – a showing Defendants cannot possibly make. *Aloe Crème Laboratories, Inc. v. Milsan, Inc.*, 423 F.2d 845, (C.A. 5, 1970).

Having demonstrated a proprietary interest in the use of a name or mark, a plaintiff under LSA-R.S. 51:223.1 must then show infringement in order to obtain an injunction.[3] Citing as guidance the federal Fifth Circuit's opinion in *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336 (C.A. 5, 1984), the Louisiana Supreme Court in *Gulf Coast Bank* listed the following "representative" factors for determining whether likelihood of consumer confusion (and, thus, infringement) exists:

1.   similarity of products,
2.   identity of retail outlets and purchasers,
3.   identity of advertising media,
4.   strength or distinctiveness of the mark or name,
5.   defendant's intent,
6.   similarity of design, and
7.   actual confusion.

652 So.2d at 1320.

Under the *Gulf Coast Bank* analysis (which mirrors the Lanham Act's), "[a]ctual confusion is patently the best evidence of likelihood of confusion," *Bonanno, supra*, 665 So.2d at 60.

Actual confusion is amply evident here. According to the affidavits of Hailey F. Soileau and Brenda F. Bahr (attached as Exhibits A and B, respectively), from July through October 2009 at least 18 different customers actively contacted the Walkers seeking information about their "new product" – i.e. Punch Ya Daddy. Ms. Bahr's

---

[3] Strictly speaking, LSA-R.S. 51:223.1 permits injunction to prevent dilution "in cases of unfair competition notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services" – that is, even where infringement has not yet occurred. *See Gulf Coast Bank, supra*, 652 So.2d at 1312. In this matter, actual competition and actual confusion moot any question of whether injunction would be appropriate absent actual infringement.

7

affidavit and that of Sarah J. Clark (attached as Exhibit C) also indicate that distributors of Slap Ya Mama products have confused Defendants' imitation with the original.

In many cases (e.g. *Bonanno* and *Chinchuba, supra*), actual confusion or its likelihood in the minds of consumers arises through linguistic similarity of trade names (that is, they sound alike): e.g. "Gulf Coast Bank" versus "Gulf Coast Bank & Trust Company," or "Drusilla Seafood Market" versus "Drusilla Seafood Restaurant." However, similar wording is important only in the confusion it causes; it is not talismanic in its own right.

Trade marks and trade names alike may confuse consumers whether they are linguistically similar or not; the "first question to be considered is whether the label or trade-mark used by defendant is a colorable imitation of plaintiffs' trade-mark, so that the public may be deceived or misled into the purchase of the productions of the one supposing them to be those of the other." *A. Cusimano & Co. v. Olive Oil Importing Co.*, 38 So. 200, 202 (La. 1905) (internal quotation marks omitted).

Here, Defendants replaced one term for a physical strike with another ("punch" for "slap", and exchanged a word for one parent with the other ("Daddy" for "Mama"), and placed the resulting (independently confusing) trade name on packaging apparently designed to resemble Plaintiff's. The parties' trade names may not sound alike, but their cognitive similarity and the near-identity of the associated trade mark has nevertheless produced the "best evidence of the likelihood of confusion," actual confusion in the minds of the public. *Guillot v. Wagner*, 98-840 (La.App. 5th Cir. 2/10/99), 731 So.2d 335, 337.

8

As for the other, lesser *Falcon Rice Mill* factors, the parties' products obviously are closely similar: both are dry Cajun seasoning mixes. Their potential markets for customers and distributors are largely identical; attached as Exhibit D are numerous photographs of New Orleans merchants stocking the parties' products side by side. As discussed above, as an "arbitrary or fanciful" name in commercial use for 13 years, "Slap Ya Mama" and its associated trademark labeling are both distinctive and strong.

*State law: Requirements for issuance of an injunction*

Preliminary injunction is an interlocutory device designed to preserve the status quo pending full trial on the merits of a case. An applicant "need make only a prima facie showing that he will prevail on the merits. Thus, the preliminary injunction requires less proof than is required in an ordinary proceeding for a permanent injunction." *Paddison Builders, Inc. v. Turncliff*, 95-1753 (La.App. 1st Cir. 4/4/96), 672 So.2d 1133, 1136.

Generally speaking, that prima facie showing by an applicant for injunctive relief must include proof that, absent the relief sought and to which he is entitled, he will suffer irreparable harm. LSA-C.C.Pr. Art. 3601(A); *General Motors Acceptance Corp. v. Daniels*, 377 So.2d 346 (La. 1979). Plaintiff respectfully submits that it is entitled to the relief sought and its likelihood of success on the merits, and the very nature of its causes (infringement and dilution of a mark in the public mind, and thus public confusion), render monetary recompense insufficient.

Defendants' activities have tarnished and will eventually erode Plaintiff's rights in their trade name "Slap Ya Mama" and its associated marks if Defendants are not enjoined; these harms are *inherently* irreparable. "Trademark infringement, unfair competition, and dilution by their very nature result in irreparable injury since the

attendant loss of goodwill, reputation and business cannot adequately be quantified and the trademark owner cannot adequately be compensated." *Bayer Corp. v. Custom School Frames, L.L.C.*, 259 F.Supp.2d 503, 510 (E.D.La., 2003).

In addition, Plaintiff notes that an applicant for injunctive relief need *not* show that the harm inflicted is irreparable "when the act complained of is unlawful." *Lafreniere Park Foundation v. Friends of Lafreniere Park, Inc.*, 97-152 (La.App. 5th Cir. 7/29/97), 698 So.2d 449, 452. Such unlawful acts *may* be criminal, but may also merely be violations of civil duties; *see, e.g., Camp, Dresser & McKee, Inc. v. Steimle & Associates, Inc.*, 94-547 (La.App. 5th Cir. 2/15/95), 652 So.2d 44 (violation of parish code prohibiting removal of solid waste from disposal site); *Ouachita Parish Police Jury v. American Waste and Pollution Control Co.*, 606 So.2d 1341 (La.App. 2nd Cir. 1992), *writ denied*, 609 So.2d 234 (La. 1992), *cert. denied*, 508 U.S. 909 (1993) (failure to conform with federal environmental laws governing waste disposal).

Even assuming *arguendo* that the harm inflicted by Defendants upon the Walkers is not irreparable (which Plaintiff at all times denies), Defendants are presently in violation of both the civil (unfair trade practice, LSA-R.S. 51:1409) and criminal law (false advertising, LSA-R.S. 51:411(E)) of Louisiana.

Plaintiff thus ought to be relieved of its burden of showing irreparable harm, in the public interest of ceasing and discouraging unlawful conduct. "This judicially created rule is an exception to the general rule that an injunction will not issue where irreparable injury will not otherwise result." *Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Bd.*, 586 So.2d 1354, 1359 (La. 1991).

*State law: Security required for preliminary injunction*

Louisiana Code of Civil Procedure Art. 3610 requires that a movant's posted bond "indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained." Since Defendants in their Memorandum in Opposition have specified no such costs and damages – beyond characterizing them as "monumental," Rec. Doc. 12, p. 7 – Plaintiff respectfully suggests bond be set at a *de minimis* amount unless and until Defendants can demonstrate their potential losses with particularity.


**Federal Remedies**

*Pending applications with the United States Patent and Trademark Office do not prejudice Plaintiff's action*

As Defendants note in their Answer (Rec. Doc. 6), they filed on July 1, 2009 an application with the federal trademark registrar for the word mark "Punch Ya Daddy." On December 8, 2009, the Patent and Trademark Office issued a Notice of Publication inviting any persons injured by registration of the mark to oppose it. Defendants can only register the word mark "Punch Ya Daddy" once that public-contest period is complete.

Defendants do *not* benefit from any effects of registration (principally, "prima facie evidence of the registrant's right to use the mark," *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (C.A. 5, 1980)) unless and until they present a certificate of registration, 15 U.S.C. 1057(b).[4] At this time, they cannot.

---

[4] Application for registration confers only the presumption of constructive use, but even that presumption is not operative against an opponent, like Plaintiff, which has used the mark prior to the application's filing. 15 U.S.C. 1057(c).

Even if Defendants had successfully registered the *word mark* "Punch Ya Daddy," application for registration of those words alone would not capture the infringement produced by placing those words within their lookalike product packaging.

Finally, federal registration by Defendants, if and when it occurs, would provide only *prima facie* evidence "of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration," 15 U.S.C. 1115(a).

Such evidence would easily be rebutted by Plaintiff's undisputed priority of use in commerce of its mark "Slap Ya Mama," with which "Punch Ya Daddy" already has been actually confused, by consumers and even by distributors:

> It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services…. if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated.
>
> *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1220 (C.A. 9, 1996)

Likewise, the present suspension of Plaintiff's own, and senior, application for registration of "Slap Ya Mama" does not operate against the Walkers' ownership of the mark or their right to enjoin Defendants.

That suspension, as Defendants acknowledge, is pending the outcome of another application, for the mark "So Good Yull Slap Yo Mama!" That application, made by Germantown Commissary, Inc. in 2006, concerns restaurants and prepared meats (application details from the Patent & Trademark Office attached as Exhibit E). Plaintiff

is not involved either in the restaurant business or in offering prepared meats; upon information and belief, neither are Defendants.

That application, by a one-location, Memphis-style barbecue eatery in Germantown, Tennessee, appears to be the single example Defendants can offer for their extraordinarily broad claims that "Slap Ya Mama" is "often used in the food industry" (Rec. Doc. 12, p. 5) and that "its derivatives have long been used by others in the food services and condiment industry" (p. 2). If any other users of "Slap Ya Mama" or derivative marks are out there, they apparently have eluded both Defendants (who do not cite any other examples, much less provide proof) and the U.S. Patent and Trademark Office.

In fact, as the Court can see by reference to Exhibit E, Germantown Commissary's pending application indicates a "first use in commerce" of March 13, 2001 – meaning the Walkers have priority of use, and therefore senior rights, over that third-party applicant as well as over Defendants.

The present federal-registration situation, then, consists of three applicants, two of them parties to this suit and one not, all of whom presently have pending applications with the Patent and Trademark Office. None can produce certificates of registration, so none is afforded any evidentiary presumptions in its favor. Of the three, the Walkers claim the most senior use. "A junior user must avoid choosing a mark which may cause confusion with the senior user's mark." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (C.A. 5, 2009).

*Federal law: Dilution (including infringement) gives rise to injunction claim*

13

The federal sovereign, like the state, confers on Plaintiff the right to injunctive relief "against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment," 15 U.S.C. 1125(c)(1).[5]

"To prevail on their trademark infringement claim, the plaintiffs must show two things. First, they must establish ownership in a legally protectible [sic] mark, and second, they must show infringement by demonstrating a likelihood of confusion." *Board of Supervisors for Louisiana State University v. Smack Apparel Co.*, 550 F.3d 465, 475-6 (C.A. 5, 2008).

"Ownership," under federal as under Louisiana law, is not a function of registration, but of use in commerce. Both sovereigns apply the same protections to unregistered and registered trademarks alike. As noted above, "[t]o recover for a violation of Section 43(a) of the Lanham Act, it is not necessary that there be a registered trademark or service mark." *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F.Supp. 366, 373 at FN2 (S.D.N.Y., 1979).

As the district court for the Eastern District has pointed out, what satisfies the state-law requirements of Title 51 satisfies the Lanham Act as well. *Prudhomme, supra*, 800 F.Supp. 390, 395 (E.D.La., 1992).

*Federal law: Dilution (including infringement) of trade dress*
Federal statutory and jurisprudential law also separately provide an action for infringement or dilution of "trade dress." The United States Supreme Court described trade dress as "design or packaging of a product… which serves to identify the product

---

[5] That statute provides the model for Louisiana's anti-dilution provision, LSA-R.S. 51:223.1.

with its manufacturer or source… [is] a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001). Trade dress protection extends both to infringement (15 U.S.C. 1125(a)(3)) and dilution (15 U.S.C. 1125(c)(4)) of distinctive design or packaging.

According to the Fifth Circuit Court of Appeals, a trade-dress infringement claim is a two-part analysis: "The first question is whether the product's trade dress qualifies for protection. This inquiry encompasses three issues: (1) distinctiveness, (2) secondary meaning, and (3) functionality." *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (C.A. 5, 1989).

A few years after *Blue Bell*, the United States Supreme Court clarified that, as to trade dress which is inherently distinctive, no showing of acquired secondary meaning is necessary. *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763 (1992). Therefore, in order to qualify for protection, Plaintiff's packaging[6] need only be distinctive and non-functional. Fonts, logos and graphics as used by Plaintiff on Slap Ya Mama's packaging serve aesthetic, not practical, purposes; and obviously little mechanical purpose is accomplished by a paper label affixed to a plastic container. Plaintiff respectfully submits that its product packaging are inherently distinctive: "consumers associate the … designs primarily as an indication of source, as opposed to an indication of the desirability or artistic quality of the product itself." *Berg v. Symons*, 393 F.Supp.2d 525, 553 (S.D.Tex., 2005).

---

[6] The Court later held, in *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000),  that product *design* cannot be inherently distinctive because it serves a functional purpose. That restriction does not extend to product *packaging*.

Second, "if the trade dress is protected, the court must then determine whether the trade dress has been infringed. Infringement occurs only when there is a likelihood of confusion between the products of the plaintiff and the defendant." *Blue Bell, supra*, 864 F.2d at 1256 (C.A. 5, 1989). In this matter, not just likely, but *actual*, confusion appears to be rampant in the marketplace. The facts at hand satisfy jurisprudential requirements for trade dress infringement, meriting injunctive relief.

*Federal law: Requirements for issuance of an injunction*

Federal Lanham Act jurisprudence requires an applicant for a preliminary injunction to establish four elements of fact: (1) a substantial likelihood of success on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any damage that the injunction might cause defendants, and (4) that the injunction will not disserve the public interest. *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (C.A.5, 1999).

These elements, Plaintiff respectfully submits, are satisfied by the same proof which suffices under Louisiana law: the Walkers can show both a substantial likelihood of success on the merits and the substantial threat of irreparable harm absent injunction. Since Defendants here have no longstanding interest in the trade name "Punch Ya Daddy" or its associated marks, and are actively trading on the goodwill accrued in the Walkers' trade name "Slap Ya Mama" and associated marks, injunction poses no threat of damage at all to Defendants' *legitimate* interests. Finally, the consuming public will be served, its confusion abated, by issuance of an injunction.

16

*Federal law: Security required for preliminary injunction*

Federal Rule of Civil Procedure 65(c) requires "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." District courts have discretion to determine the appropriate amount of security, *Humana Inc. v. Avram A. Jacobson, M.D.*, 804 F.2d 1390 (C.A. 5, 1986). Exercise of that discretion has included considering factors such as the strength of the movant's likelihood of success on the merits; demonstration by defendants of the losses they will suffer, if any, from issuance of an injunction; and the cost to defendants of compliance. *Petro Franchise Systems, LLC v. All American Properties, Inc.*, 607 F.Supp.2d 781, 801-802 (W.D.Tex., 2009).

In this matter, Plaintiff submits that widespread actual confusion of a junior user's product with a senior user's strongly militates in favor of its likelihood of success on the merits. Defendants have not identified any particularized losses whatsoever they might suffer from issuance of an injunction; nor have they identified what costs might be required (presumably, redesign of a label they have used for less than six months) for compliance. In sum, whatever bond the Court might require should be minimal.

17

Respectfully submitted,


_____/signed_____
William W. Stagg (No. 1613)
Ryan M. Goudelocke (No. 30525)
Durio, McGoffin, Stagg & Ackermann
 220 Heymann Boulevard, Lafayette, LA  70503
Post Office Box 51308, Lafayette, LA  70505
Telephone: (337) 233-0300
Fax: (337) 233-0694
*Counsel for Plaintiff, Walker & Sons, Inc.*


## **CERTIFICATE OF SERVICE**

I hereby certify that I have, this 28th day of December, 2009, provided the adverse parties with a copy of the above and foregoing pleading by means of the Western District's CM/ECF electronic filing system.


_____/signed_____
**Ryan M. Goudelocke**


18