**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**WALKER & SONS, INC.**                    **CIVIL ACTION NO. 6:09-cv-1822**

**VERSUS**                                               **JUDGE HAIK**

**PUNCH YA DADDY, LLC et al**           **MAGISTRATE JUDGE HILL**
_____

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON INFRINGEMENT**

    **May it Please the Court**:

    Plaintiff, in this Memorandum, respectfully submits to the Court that its years-long use of the phrase "slap ya mama" in commerce, in connection with the sale of food seasonings, does indeed entitle Walker & Sons to protect the exclusivity of that use, and that its position is supported by extensive jurisprudence and the very intent of the American trademark system.

    Plaintiff submits also that extensive and overwhelming evidence of actual consumer confusion, coupled with strong support by virtually all of the controlling factors relied upon by the federal courts in trademark decisions, demonstrates conclusively that confusion between the parties' products is not just likely – it is certain.

    Having satisfied those twin burdens beyond any genuine issue of material fact, Plaintiff respectfully suggests, summary judgment is warranted on its claims for injunctive relief and entitlement to damages.

## TABLE OF CONTENTS

A. Summary of Plaintiff's argument ............................................................... 1

B. Table of Authorities ................................................................................. 3

C. Factual and Procedural History .............................................................. 7

D. Summary Judgment on Trademark Infringement ................................. 9

E. Essential Elements: Protectable Interest............................................... 10

F. Essential Elements: Likelihood of Confusion ....................................... 21

G. Remedies: Federal and State ................................................................. 33

H. Conclusion ............................................................................................. 36

## **TABLE OF AUTHORITIES**

**Cases***:*

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225 (C.A.5, 2010) . . . . . . . . . .  5

*American Registry of Radiologic Technologists. v. Garza*, 512 F.Supp.2d 902

    (S.D.Tex., 2007). . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*American Rice v. Producers Rice Mill, Inc.*, 518 F.3d 321 (C.A.5, 2008) . . . . . . . . . . . ...4

*Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252 (C.A.5, 1980) . . . . . . . . . . . . . . . .  23

*Artcraft Novelties Corp. v. Baxter Lane Co. of Amarillo*, 685 F.2d 988 (C.A.5, 1985). . .  12

*AutoZone v. Strick,* 543 F.3d 923 (C.A.7, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*B.H. Bunn Co. v. AAA Replacement Parts Co.,* 451 F.2d 1254 (C.A.5, 1971) . . . . . . . .  20

*Bayer Co. v. United Drug Co.,* 272 F. 505 (S.D.N.Y. 1921) . . . . . . . . . . . . . . . . . . . . .  6

*Blue Bell Bio-Medical v. Cin-Bad, Inc.,* 864 F.2d 1253 (C.A.5, 1989) . . . . . . . . . . . . . 26

*Board of Supervisors for Louisiana State University Agricultural and Mechanical*

    *College v. Smack Apparel Co.,* 550 F.3d 465 (C.A.5, 2008) . . . . . . . . . . . . . . . . . . . . 17

*California v. ARC America Corp.,* 490 U.S. 93 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Chinchuba Institute v. St. Tammany Parish School Board,* 95-0419 (La. App. 1st Cir.

    11/9/95), 664 So.2d 1230. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

*Comfort Trane Air Conditioning Co. v. Trane Co.,* 592 F.2d 1373 (C.A.5, 1979) . . . . .  22

*Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145 (C.A.5, 1985) . . . . . . . . . .  19

*Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.,*

    616 F. Supp.2d 622 (N.D. Tex., 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Dial-A-Mattress Operating Corp.*, 240 F.3d 1341 (C.A.Fed., 2001) . . . . . . . . . . . . . . .  6

*Door Systems, Inc. v. Pro-Line Door Systems, Inc.,* 83 F.3d 169 (C.A.7, 1996) . . . . . . . 17

*DuPont Cellophane Co. v. Waxed Products Co.,* 85 F.2d 75 (C.A2, 1936) . . . . . . . . . . .  6

*E.I. DuPont de Nemours & Co.,* 476 F.2d 1357 (C.C.P.A. 1973) . . . . . . . . . . . . . . . . . . 14

*El Chico, Inc. v. El Chico Cafe,* 651 F.2d 311 (C.A.5, 1981) . . . . . . . . . . . . . . . . . . . . . 19

*Elizabeth Taylor Cosmetics Co., v. Annick Goutal S.A.R.L.*, 673 F.Supp. 1238
(S.D.N.Y., 1987) . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . 10

*Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188 (C.A.5, 1998) . . . . . . . . . . 16, 23

*Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070 (C.A.5, 1997) . . . . . . . . . . . . . . 8

*Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500 (C.A.5, 1980) . . 19

*Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.,* 725 F.2d 336 (C.A.5, 1984) . . . . . 16

*Food Fair Stores, Inc. v. Food Fair, Inc.,* 177 F.2d 177 (C.A.1, 1949) . . . . . . . . . . . . . 20

*Golden Door, Inc. v. Odisho,* 646 F.2d 347 (C.A.9, 1980) . . . . . . . . . . . . . . . . . . . . . . . 29

*Gulf Offshore Oil Co. v. Mobil Oil Corp.,* 453 U.S. 473 (1981) . . . . . . . . . . . . . . . . . . . 28

*Gulf Coast Bank v. Gulf Coast Band & Trust Co.,* 94-2203 (La. 4/10/95)
652 So.2d 1306 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

*Hasbro, Inc. v. Lanard Toys, Ltd,* 858 F.2d 70 (C.A.2, 1988) . . . . . . . . . . . . . . . . . . . . . 9

*Insty\*Bit, Inc. v. Poly-Tech Indus.,* 95 F.3d 663 (C.A.8, 1996) . . . . . . . . . . . . . . . . . . . 6

*Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . .29

*Lemme v. National Broadcasting Co., Inc.*, 472 F.Supp.2d 433 (E.D.N.Y., 2007) . . 10, 12

*Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486 (C.A.5, 1992) . . . . . . . . . . . . . . . . . . 24

*Northland Aluminum Products, Inc.,* 777 F.2d 1556 (C.A.Fed., 1985) . . . . . . . . . . . . . . 7

*Pebble Beach Co. v. Tour 18 1 Ltd.,* 155 F.3d 526 (C.A.5, 1998) . . . . . . . . . . . . . . . . . . 16

*Philip Morris USA Inc. v. Lee,* 547 F. Supp.2d 667 (W.D. Tex., 2008) . . . . . . . . . . . . . 4

*Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 687 F.2d 563 (C.A.2, 1982) . . . . 10

*Prudhomme v. Proctor & Gamble Co.,* 800 F.Supp. 390 (E.D.La., 1992) . . . . . . . . . 29, 30

*Ragas v. Tennessee Gas Pipline Co.,* 136 F.3d 455 (C.A.5, 1998) . . . . . . . . . . . . . . . . . . 4

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (C.A.2, 1994) . . . . . . . . . . . . . . . . 15

*Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477 (C.A.5, 2004) . . . . . . . . . . . 16

*Security Center, Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295 (C.A.5, 1985) . . . . . . . . 11

*Sicilia Di R. Biebow & Co. v. Cox,* 732 F.2d 417 (C.A.5, 1984) . . . . . . . . . . . . . . . . . . . 27

*Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Ass'n*
651 F.2d 311 (C.A.5, 1981) . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Syncromatic Corp. v. Eureka Williams Corp.,* 174 F.2d 649 (C.A.7, 1949) . . . . . . . . . . 20

*The Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955 (C.A.2, 1996) . . . . . 19

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23 (2001) . . . . . . . . . . . . . 27

*Trappey v. McIlhenny Co.,* 281 F. 23 (C.A.5, 1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992) . . . . . . . . . . . . . . . . . . . . . . 15

*Union Nat'l Bank of Texas, Laredo, Texas. v. Union Nat. Bank of Texas*
    *Austin, Texas,* 909 F.2d 839 (C.A.5, 1990) . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . 8

*United Mine Workers of America v. Gibbs,* 383 U.S. 715 (1966) . . . . . . . . . . . . . . . . . 29

*Vision Center v. Opticks, Inc.,* 596 F.2d 111 (C.A.5, 1979) . . . . . . . . . . . . . . . . . . . . . . 11

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 208 (2000) . . . . . . . . . . . . . . 5

*Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658 (C.A.5, 2000) . . . . . . . . . 16

*World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482
    (C.A.5, 1971) . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.,* 576 F.3d 221 (C.A.5, 2009) . . . . . . . . . . 15

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786 (C.A.5, 1983) . . . . . . . . . 6

**<u>Statutes and Rules:</u>**

F.R.C.P. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

F.R.C.P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

15 U.S.C. 1063. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

15 U.S.C. 1119. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

15 U.S.C. 1125 (c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

15 U.S.C. 1127. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

LSA-R.S. 51:1409. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

### C. Factual and Procedural History

Tony Walker and his family began selling their family-recipe Cajun powdered seasoning under a homemade label reading "slap your mama" in 1996, at a convenience store along Louisiana state Highway 29. Plaintiff, **Walker & Sons, Inc.**, first sold "Slap Ya Mama" Cajun Seasoning, labeled with its distinctive chili-peppers logo, at the Smoked Meats Festival in Ville Platte in June 1998.

In February 2008, the Walkers registered with the Louisiana Secretary of State several trade names reflecting their use in commerce of the words "Slap Ya Mama" and "Slap Ya Mama Cajun Seasoning." They also registered several "Slap Ya Mama" chili-pepper product labels as trade marks, including "Slap Ya Mama" and "Slap Ya Mama Cajun Seasoning."

One year later, in February 2009, defendant **Kirby Falcon Jr.** organized **Punch Ya Daddy, L.L.C.** Punch Ya Daddy filed in May 2009 for registration of the trade name "Punch Ya Daddy" with the Louisiana Secretary of State.

Soon thereafter, based on the near-identity of Mr. Falcon's packaging and trade name to Plaintiff's pre-existing designs and trademarks, customers began requesting Walker & Sons' "new product," Mr. Falcon's Punch Ya Daddy.

In March 2010, the U.S. Patent & Trademark Office issued final registration of Defendants' mark "Punch Ya Daddy" and related design. Despite issuance of a preliminary injunction in March 2010 against Defendants' use of their confusingly similar packaging, Defendants have transitioned to a marginally-different set of packaging designs that continue to confuse consumers as to their source.

At hearing in January 2010, this Court prohibited use in commerce of Defendants' then-current packaging, remarking that "[a] blind man could see that these things look a lot alike," (Rec. Doc. 39, p. 114). However, the Court declined to enjoin use of the word mark "Punch Ya

7

Daddy," acknowledging similarity between it and "Slap Ya Mama" but finding the requirements for preliminary injunction unsatisfied (Rec. Doc. 23).

In February 2011, the Patent and Trademark Office finalized registration of the word mark "Slap Ya Mama" and its accompanying design including stylized text and peppers.[1]

Defendants, who are presently enjoined by the Court from using in commerce their label and packaging in use before March 2010, have since revised their packaging in a manner they claim "eliminates any similarity" to Plaintiff's.[2]

Also in February 2011, the Court denied Defendants' Motion for Partial Summary Judgment, while questioning at oral argument the entitlement of Plaintiff to a protectable interest in the "Slap Ya Mama" mark, due to its use as a colloquialism predating Plaintiff's use of the phrase in commerce.

Trial in this matter presently is set to begin February 6, 2012.

---

[1] For simplicity, this Memorandum refers to both the trade name and design mark, each of which incorporates the phrase "slap ya mama," as "the Slap Ya Mama mark."
[2] Defendant's Memorandum in Support, p. 6; Rec. Doc. 26.

### D. Summary Judgment on Trademark Infringement

Generally, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Rule 56 explicitly permits partial summary judgment on only certain claims or defenses, as Plaintiff here seeks.

Likewise, "[a] party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipline Co.*, 136 F.3d 455 (C.A.5, 1998).

Where it is merited, summary judgment is favored. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986), quoting F.R.C.P. 1.

In trademark infringement, a plaintiff's fundamental burden is twofold: first, "that the mark is legally protectable;" after that threshold showing, Plaintiff "must then establish infringement by showing a likelihood of confusion." *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (C.A.5, 2008).[3]

---

[3] *Accord, Philip Morris USA Inc. v. Lee*, 547 F.Supp.2d 667, 674 (W.D. Tex., 2008).

### E. Essential Element: Protectable Interest

"To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public." *American Rice, supra*, 518 F.3d at 329. Trademark law measures a mark's "distinctiveness" by its ability to intrinsically "identify a particular source"[4] – the overarching goal of the American trademark scheme.

Preliminarily, it should be noted that Plaintiff's mark already enjoys a favorable presumption of validity. "[P]roof of the registration of a mark with the PTO constitutes prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (C.A.5, 2010).[5]

Although Defendants have not petitioned this Court to order cancellation of Plaintiff's "Slap Ya Mama" mark, they have pleaded in defense that Plaintiff "has no proprietary interest in said name or slogan" due to its "widespread use… in commerce" (Rec. Doc. 6, p. 7), which could be read as an allegation that the mark is "generic" – a trademark-law term of art meaning a mark is unprotectable.

More important, the Court itself has raised the question – and of course, protectability and enforceability of the "Slap Ya Mama" mark are pre-conditions to recovery for infringement. Therefore, Plaintiff will demonstrate here why the mark's favorable presumption of validity, conferred by its federal registration, is strongly reinforced by the nature of the mark in light of controlling trademark jurisprudence.

"Courts and commentators have traditionally divided potential trademarks into four categories. A potential trademark may be classified as (1) generic, (2) descriptive, (3)

---

[4] *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000).
[5] Exhibit A, attached, USPTO certificates of registration for the Slap Ya Mama marks.

suggestive, or (4) arbitrary or fanciful." *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (C.A.5, 1983). These terms describe the "distinctiveness" of a mark, in order from least to greatest.

An **arbitrary**, **fanciful**, or **suggestive** mark is deemed inherently distinctive, and therefore entitled to protection, because "its intrinsic nature serves to identify a particular source of a product." By contrast, a **descriptive** mark merits protection only if it has become distinctive by acquiring a secondary meaning. Finally, a **generic** term is not protected by the Lanham Act, because it is merely used by the general public to identify a category of goods. *Insty\*Bit, Inc. v. Poly-Tech Indus.*, 95 F.3d 663, 672 (C.A. 8, 1996).

### 1) *"Slap Ya Mama" is not generic*

At hearing on Defendants' Motion for Partial Summary Judgment[6], on February 17, 2011, the Court asked counsel "You don't think 'Slap Ya Mama' is kind of a generic term?"

Counsel answered in the negative. As the Court of Appeals said in *Zatarains*, "[a] *generic* term is the name of a particular genus or class of which an individual article or service is but a member," 698 F.2d at 791 (internal quotation marks omitted; emphasis in original). As examples, the *Zatarains* panel listed terms like "aspirin[7]" and "cellophane[8]."

Generic terms are by definition incapable of indicating a particular *source* of the goods or services, and cannot be registered as trademarks; doing so "would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (C.A.Fed., 2001).

---

[6] Transcript attached as Exhibit B, p. 9.
[7] *Bayer Co. v. United Drug Co.*, 272 F. 505 (S.D.N.Y. 1921).
[8] *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75 (C.A.2, 1936).

For example, "bundt" was held generic for a circular type of cake in *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556 (C.A.Fed., 1985). The mark "seats," in contrast, was held *not* generic in *In re Seats, Inc.*, 757 F.2d 274 (C.A.Fed., 1985), because it was not generic *for the product being sold*, which was airline reservations: "The term 'seats' may be generic in relation to chairs or couches or bleachers. It is clearly not generic to reservation services." Id., 757 F.2d at 277.

Since the term "Slap Ya Mama" is not used to describe a "genus or class" of products, it cannot be classified as "generic." Terms like "powdered Cajun seasoning" or "powdered seasoning" or simply "seasoning" would, on the other hand, be unprotectable as "generic."

At hearing in February, the Court noted an interesting example of a potentially generic mark, one that may have *become* generic through sheer ubiquity: Tabasco. As the Court mentioned, "I used to walk into the grocery store and say show me the Tabasco and I'd walk over there and there is Broussard's Louisiana Hot Sauce."[9]

The trade name "Tabasco," which is registered[10] to the McIlhenny Company of Avery Island, is named after the tabasco pepper used in its manufacture, itself named for the Mexican state of Tabasco where the pepper grows wild.

As early as 1922, the Fifth Circuit concluded that "by the efforts of the McIlhennys this sauce, under the name of 'Tabasco,' became widely known and used, so much so that the consumer, in asking for it, called for 'Tabasco,' and by such designation meant the 'Tabasco' manufactured by the McIlhennys." *Trappey v. McIlhenny Co.*, 281 F. 23, 24 (C.A. 5, 1922).

---

[9] Exhibit B, pp. 8-9.
[10] The word mark "Tabasco," for pepper sauce, bears U.S. Patent and Trademark Office trademark registration number 3220184. McIlhenny's claimed date of first use of the mark in commerce, for pepper sauce, was 1868, the year of the company's founding. McIlhenny has since registered the mark in connection with sale of many other goods, including books, clothing and the like.

By virtue of its success, though, the McIlhennys' mark "Tabasco" has (in the Court's perception, and likely in many others') become synonymous with the product it sells. "Aspirin," once a Bayer trademark, met the same fate. "Witness the struggle of the owners of the 'Xerox' trademark to discourage the use of the term as a verb or a noun in place of "photocopy." *Union Nat'l Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 845 at FN15 (C.A.5, 1990).

Owners of marks like "Tabasco" and "Xerox" actively fight the "trademark graveyard of genericism"[11] because their value (and the value of all trademarks) is their identification of a product's *source*, not the nature of the product.

When the public can "Xerox" a document on a machine made by a competitor, or buy "Tabasco sauce" from the Broussards and not the McIlhennys, the mark has become the name for a class of products, not the name for a *source* of those products.

In fact, an owner's failure to enforce its rights to a mark can hasten the mark's death. "When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used," the mark has been "abandoned." 15 U.S.C. 1127, *see Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (C.A.5, 1997).

The Court's comparison of "Slap Ya Mama" to a mark like "Tabasco," Plaintiff respectfully submits, gets the analysis backward. Unless a customer could walk into a store, ask for "Slap Ya Mama" and reliably be pointed in the direction of *any* Cajun powdered seasoning, the mark cannot be generic. "Slap Ya Mama" is a name which connects the source – Walker &

---

[11] *Union Nat'l Bank, supra.*

13

Sons – to a product. Unless "Slap Ya Mama" becomes the commonly-accepted name *of that product*, powdered seasoning, the mark cannot be generic.[12]

> *2) Existing expressions like "slap ya mama" frequently are incorporated into new marks*

At hearing on Defendants' summary judgment, the Court also observed that the phrase 'slap ya mama' has "been around a long time before you guys put it in print."[13] The Court seemed to suggest that a trademark registered for a particular class of products[14] cannot include or incorporate pre-existing terms, expressions, colloquialisms or slang – generally speaking, "language" that predated use of the mark.

That position, Plaintiff respectfully suggests, is not supported by the Lanham Act or trademark jurisprudence. "[T]he etymology, general usage, and common meaning of a phrase are of limited relevance in characterizing it for Lanham Act purposes." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 74 (C.A.2, 1988).

Trademark law's two purposes, according to commentary in the Congressional record of the Lanham Act, are, first, "[T]o protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get." *American Registry of Radiologic Technologists v. Garza*, 512 F.Supp.2d 902, 910 (S.D.Tex., 2007), quoting 1946 U.S.C. Cong. Serv. 1274.

"Secondly, where the owner of a trade-mark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation…." Id.

---

[12] Plaintiff submits that, anecdotally, if any mark used to compete with "Slap Ya Mama" products might be approaching generic status, it is probably the "Tony Chachere" line of seasonings.

[13] Exhibit B, p. 10.

[14] Plaintiff registered "Slap Ya Mama" in the Patent and Trademark Office's International Class 30; the goods identified as submitted in connection with registration are "flavorings and seasonings; food seasonings."

Trademark law is *not* intended to prevent incorporation of existing ideas or expressions – colloquialisms or otherwise – into present-day marks, investment in those marks, and resulting goodwill in the public mind. If it were, already-existing words or phrases, sometimes with near-universal public recognition, could never be incorporated into or used as protectable trademarks – which they very frequently are.

"Gung-ho[15]," "American Dream[16]," "Playboy[17]" and "Passion[18]," for example, each entered the English language long before it was used and registered as a trademark for a particular product (in the cited cases: toy action figures, television programs, men's magazines and perfume, respectively).

As the Court itself wondered at hearing on Plaintiff's preliminary injunction: "Heck, I used to say that when I would cook, it's so good that it makes you want to slap your mama. Is that the kind of thing that even can be used to a point that nobody else can come close to it?"[19] The answer, according to the Lanham Act and the jurisprudence, is emphatically **yes** – if by "come close to it" the Court means "sell a similar product" with it or a confusingly similar mark.

Trademark rights accrue when a user "occupies," so to speak, the use in commerce of a mark in connection with particular products. Unless that market space is already "occupied," there is no infringement, and the mark's user legitimately gains goodwill in, and rights to, that use in commerce.[20]

The fact that "gung-ho" entered widespread American use around World War II did not prevent Hasbro from claiming Lanham Act protection for its use in connection with toy action

---

[15] *Hasbro, supra.*
[16] *Lemme v. National Broadcasting Co., Inc.*, 472 F.Supp.2d 433 (E.D.N.Y., 2007).
[17] *Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 687 F.2d 563 (C.A.2, 1982).
[18] *Elizabeth Taylor Cosmetics Co., Inc. v. Annick Goutal, S.A.R.L.*, 673 F.Supp. 1238 (S.D.N.Y., 1987)
[19] Rec. Doc. 39, p. 108.
[20] Critically, a trademark holder has no interest and no right to prevent, say, a home cook from using the phrase as the Court described. Only use of the mark *in commerce*, in connection with a *similar product*, invokes trademark protection.

figures not sold until 1983 (*see Hasbro, supra*) – because no one, until then, had sold action figures under that mark.

Likewise, the fact that Walker & Sons did not invent the phrase "Slap Ya Mama" did not prevent its registration with the Patent and Trademark Office, for use in connection with seasonings; it did not prevent the Walkers from using the mark in commerce and accruing public goodwill for their products; and it does not prevent enforcement of Plaintiff's mark against the extensive consumer confusion caused by Defendants.

### 3) *"Slap Ya Mama" is suggestive, not descriptive*

The second category for classifying the "distinctiveness" of trademarks is "descriptive" – one step up from "generic" and one step below "suggestive."[21]

A mark properly classified as descriptive "identifies a characteristic or quality of an article or service," *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 116 (C.A.5, 1979). In that case, for example, the Court of Appeals found the trade name "Vision Center" descriptive "of a clinic providing optical goods and services," and therefore not protectable without a showing of "secondary meaning."[22]

There may be nearly as many enunciations of the difference between suggestive and descriptive marks as there have been judicial opinions on the subject. In 1985 the Court of Appeals recommended, in *Security Center, Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1298-99 (C.A.5, 1985), "two overarching questions to be considered in determining whether a mark is descriptive or suggestive….":

---

[21] The categories are uniformly enumerated in order of increasing distinctiveness, from "generic" (never protectable) to "descriptive" (protectable only under certain circumstances) through to "suggestive" and "arbitrary or fanciful" (protectable without need of further proof).

[22] Because Plaintiff argues that "Slap Ya Mama" is suggestive, and not descriptive, a discussion of secondary meaning and how it may be shown are beyond the scope of this Memorandum.

1. "First, we must inquire how much imagination is required on the consumer's part in trying to cull some indication from the mark about the qualities, characteristics, effect, purpose, or ingredients of the product or service."

2. "Second, we determine whether sellers of similar products are likely to use, or actually do use, the term in connection with their goods."

One oft-quoted commentator summarized the first test as follows: "If the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness," *Lemme v. National Broadcasting Co., Inc.*, 472 F.Supp.2d 433, 444 (E.D.N.Y., 2007), quoting *McCarthy on Trademarks* Sec. 11:67 at 11-129.

Employing the second test, the Fifth Circuit in *Vision Center* wrote that it asks "whether competitors would be likely to need the terms used in the trademark in describing their products," 596 F.2d at 117.[23] Since the word "vision" is "virtually indispensable to the vocabulary of the optical goods industry;" and "center" is "a common term found useful by a variety of commercial enterprises," that appellate panel concluded that "Vision Center" was descriptive, not suggestive. Id.

Considering the word "Texas" used in combination with oversized novelty goods – "because, as we can all imagine, everything is larger in Texas" – the Court of Appeals concluded, in contrast, that mark as used was not descriptive but suggestive: it "suggests, rather than describes, some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of those goods." *Artcraft Novelties Corp. v. Baxter Lane Co. of Amarillo*, 685 F.2d 988, 992 (C.A.5, 1982).

---

[23] Obviously, other sellers' uses that are *infringing*, or otherwise influenced by the senior mark's user and not by necessity of description, should not prejudice a mark's classification. "We look into actual and likely use of a mark in order to determine whether its protection, i.e., its exclusion from the language freely available for commercial use, interferes with competition among providers of the same product or service." *Security Center, supra*.

Considering the plain words of Plaintiff's mark, the words "slap" and "mama" clearly have no intrinsic connection with seasonings, or even with food. A typical dictionary definition of the word "slap" is "a sharp blow or smack;" "mama," of course, means one's mother.[24] The combination of the words, with the possessive "ya" (slang for "your"), likewise describes nothing about seasoning products, or about any food products.

The words "slap ya mama," together or separate, cannot be said to describe any "qualities, characteristics, effect, purpose, or ingredients of the product," *Security Center, supra*. That "mental leap" between the mark's words and the product's attributes is not only not "instantaneous," as McCarthy asks – it is a long time coming, if it comes at all.

In some areas, like Louisiana, the phrase "slap ya mama" carries connotations of extreme quality – as the Court has observed, "so good that it makes you want to slap your mama."[25] Thus, the mark "Slap Ya Mama" "suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination," *Zatarains, supra*, 698 F.2d at 791. In the Fifth Circuit, that is the very definition of a "suggestive" mark.

Finally, concerning whether Plaintiff's competitors, including Defendants, are "likely to need the terms used in the trademark in describing their products:" to Plaintiff's knowledge, the record contains only a *single* instance of another user employing a similar registered mark anywhere else in the United States: the Germantown Commissary of Germantown, Tennessee filed in 2006 for registration of its mark "So Good Yull Slap Yo Mama."[26]

---

[24] Both definitions from Random House's 2011 English dictionary.
[25] Plaintiff's president, Tony Walker, has acknowledged in testimony that "slap ya mama" and derivative phrases pre-existed his family's use of the mark. Rec. Doc. 39, p. 12.
[26] Certificate of Registration attached as Exhibit C.

As the Patent and Trademark Office noted in response to Plaintiff's registration, there is obvious similarity between Plaintiff's mark and the Commissary's. Further, the Commissary's mark is used in connection with products of International Class 30, just like Plaintiff's.[27] Because of the possibility of confusion between the two, the examiner initially refused registration of Plaintiff's mark.

In response, Plaintiff submitted to the Patent and Trademark Office the Commissary's "Consent to Use and Registration of Trademark,"[28] which included the Commissary's attestation that "no likelihood of confusion results from the concurrent use and registration" of its own and the Plaintiff's marks. The "Consent to Use" agreement between Walker & Sons and the Commissary explained in detail the reasons why, including the total absence of any known instances of actual confusion.

In light of the Commissary's assurances, the Patent and Trademark Office acknowledged there was no likelihood of confusion and registered Plaintiff's marks.[29] It "is at least difficult to maintain a subjective view that confusion will occur when those directly concerned say it won't. A mere *assumption* that confusion is likely will rarely prevail against uncontroverted evidence from those on the firing line that it is not." *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A., 1973)(emphasis in original).

In short, the record reflects just one user of a potentially confusing mark[30] – and that one user has informed the Patent and Trademark Office that it sees no likelihood of confusion between its own and Plaintiff's marks.

---

[27] That class includes both Plaintiff's seasonings and the Commissary's barbecue sauce. The Commissary is principally a barbecue joint.
[28] Attached as Exhibit D.
[29] Walker & Sons' "Response to Office Action" of June 10, 2010 attached as Exhibit E.
[30] The Commissary, which claimed a first use in commerce date of 2009 for its barbecue sauce, is actually a junior user of the mark. In a conflict the mark's senior user (Walker & Sons) should prevail; but as both attested to the Patent and Trademark Office, neither has ever learned of a single instance of actual consumer confusion.

Counsel for Defendants have repeatedly suggested in briefs and arguments at hearing that use of similar marks is "widespread" and commonplace. "[L]egal memoranda and oral argument are not evidence and cannot create issues of fact capable of defeating otherwise valid motion for summary judgment," *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (C.A.2, 1994).

In any event, even if the record did reflect a few scattered users of marks resembling Plaintiff's, it could hardly be disputed that there are many, *many* more sellers of food seasonings not employing the words "slap" or "mama" in commerce than sellers who are. As the *Security Center* court pointed out, the "other sellers" test is designed to preserve competition – not to preserve other sellers' potentially infringing uses.

Not only do "other sellers" of products like Plaintiff's not *need* to use the words of the "Slap Ya Mama" mark – they are, the *vast* majority of them, not *actually using* the words of Plaintiff's mark.

By any test, including all of those used by the Court of Appeals decisions cited here, Plaintiff's mark is suggestive. Suggestive marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection," *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 228 (C.A.5, 2009), quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

### F. Essential Element: Likelihood of Confusion

In evaluating likelihood of confusion, federal courts have long employed a "digits[31] of confusion" test, a "list of factors that tend to prove or to disprove that consumer confusion is likely." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (C.A.5, 2004).[32] "No single factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of these 'digits of confusion'." *Westchester Media, infra*, 214 F.3d at 664.

The "digits" of consumer confusion differ slightly among the circuit courts of appeals, and even within circuits. "The digits are a flexible and nonexhaustive list…. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Scott Fetzer, supra*, 381 F.3d 485.

One of the Fifth Circuit's more recent formulations of the factors appears in *American Rice, supra*, 518 F.3d at 329:

1. "strength of the plaintiff's mark;
2. similarity of design[33] between the marks;
3. similarity of the products;
4. identity of retail outlets and purchasers;
5. similarity of advertising media used;
6. the defendant's intent;
7. actual confusion; and
8. degree of care exercised by potential purchasers"

---

[31] Use of the word "digits" dates from earlier cases  where the responses to each were "added together to reach a sum total conclusion…" Although modern jurisprudence makes clear that the "digits" are simply flexible and non-exclusive factors, the name of the list is preserved for continuity of terminology. *See Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 345 at FN9 (C.A. 5, 1984).

[32] *See also American Rice, supra; Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (C.A.5, 2000); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526 (C.A.5, 1998); *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188 (C.A.5, 1998).

[33] The marks at issue in *American Rice* were graphic designs of a "girl" used on labeling of rice. *Scott Fetzer* and *Westchester*, which involved word marks, expressed this digit simply as "similarity of the marks." Since word marks are at issue here, Plaintiff uses the latter formulation of the second "digit."

While no single factor is dispositive, and a finding of likelihood of confusion need not be supported even by a majority of the factors[34], "similarity of the marks, the defendant's intent, and actual confusion are particularly important."[35]

Although analysis of these "digits of confusion" is necessarily case-specific, "as with any question of fact [they] can be resolved on summary judgment if the evidence is so one-sided that there can be no doubt about how the question should be answered."[36]

In this case, the evidence indicating likelihood of confusion between the parties' respective marks is "so one-sided" that no reasonable trier of fact could conclude otherwise. For each of the *American Rice* factors, Plaintiff below submits the reasons why.

*1. Plaintiff's mark is much closer to "arbitrary" than to "generic" and so is very strong*

According to the *American Rice* panel, "[s]trength of a trademark is determined by two factors…" The first is "where the mark falls on a spectrum" of "generic" through "arbitrary and fanciful" – the same classification threshold test which determines whether a mark is protectable by the Lanham Act. "[W]ithin this spectrum the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks." 518 F.3d at 330 (internal quotations omitted).

For the reasons discussed at length above, Plaintiff's "Slap Ya Mama" mark is neither generic nor descriptive, because neither its component words nor their combination have any intrinsic connection to seasonings or to food. The mark falls on the "strong" side of the spectrum with "suggestive" and "arbitrary or fanciful" marks.

---

[34] *Board of Supervisors for Louisiana State University Agricultural and Mechanical College v. Smack Apparel Co.*, 550 F.3d 465, 478 (C.A.5, 2008).
[35] *AutoZone v. Strick*, 543 F.3d 923, 929 (C.A.7, 2008).
[36] *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 171 (C.A.7, 1996).

The second *American Rice* factor for a mark's strength is "standing of the mark in the marketplace." Id. According to a 1981 Fifth Circuit opinion, that "standing" tests the number and variety of uses of the same mark – not unlike the "need to use" test for a descriptive mark, this inquiry asks whether "proof of the widespread use of the term… militates against a finding of likelihood of confusion." *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Ass'n*, 651 F.2d 311, 317 (C.A.5, 1981).

In *Sun Banks*, for example, "over 4400 businesses registered with the Florida Secretary of State used the word 'Sun' in their names. A significant number of these businesses fell within the category designated financial institutions." Id. at 316.

As addressed above concerning the "need to use" test of other sellers in the marketplace, the evidence in this case demonstrates that just *one* other federally registered user, the Germantown Commissary of Tennessee, uses a "slap yo mama" mark in sale of products similar to Plaintiff's.[37] Far from showing "widespread use" of "slap ya mama" in commerce, the facts of this case demonstrate that almost no one other than Plaintiff is using the phrase for the products at issue.

Because of the limited use of the term "slap ya mama" with respect to seasonings, Plaintiff's mark is again on the "strong" side and this "digit" weighs in favor of finding likelihood of confusion with the marks used by Defendants.

*2. Defendants' mark "Punch Ya Daddy" chooses words as similar as possible to those of Plaintiff's "Slap Ya Mama" mark*

---

[37] There are no companies or trade names, other than Plaintiff's, registered in Louisiana under either "slap ya mama" or "slap yo mama."

Defendants have previously argued in pleadings[38] that, because the marks are "plainly, phonetically and visually distinct," they somehow cannot be "similar."

Certainly, there are plenty of examples in trademark jurisprudence of confusingly similar marks which employ literally the same words. Many of them can be gleaned simply from the names of opinions, e.g.: *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Ass'n*[39]; *El Chico, Inc. v. El Chico Café*[40]; *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145 (C.A.5, 1985).

However, similar wording is only the most obvious cause of associating marks in the consumer's mind; plain wording is not talismanic, because there are other causes of confusion. "In deciding whether the marks are similar as used, we do not look just at the typewritten and aural similarity of the marks," *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 962 (C.A.2, 1996). Similarity "is determined by considering the overall impression created by the mark[s]," *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 505 (C.A.5, 1980), and not their individual features.

Here, Defendants replaced one term for a physical strike with another ("punch" for "slap"), exchanged a word for one parent with the other ("Daddy" for "Mama"), and placed the resulting combination on packaging apparently designed to resemble Plaintiff's. Defendants have chosen words which are inextricably intertwined with the words of Plaintiff's mark – "punch" and "slap" obviously are closely related, and Defendants had no other parent to choose from except "Daddy." It hardly need be argued why consumers confuse the source of the products: the marks are, regardless of the words used, confusingly similar.

---

[38] Rec. Doc. 40-2, p. 11.
[39] 651 F.2d 311 (C.A.5, 1981).
[40] 214 F.2d 721 (C.A.5, 1954).

"As a matter of law the test for trademark infringement is not mere facial similarity, but the degree of confusion that is likely to register in the purchaser." *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1262 (C.A.5, 1971).

Further, as noted by the Court in *Bunn*, citing *Syncromatic Corp. v. Eureka Williams Corp.*, 174 F.2d 649 (C.A.7, 1949); and *Food Fair Stores, Inc. v. Food Fair, Inc.*, 177 F.2d 177, 185 (C.A.1, 1949), "the marks should be compared as wholes, and not divided and compared as subdivisions."

Similarity of competing marks is not about whether they use the same words: the test is whether their similarity is likely to produce confusion. For that reason, evidence of **actual** confusion (itself one of the "digits") "does have probative value on the issue of similarity," *Bunn*, 451 F.2d at 1261.

When, as here, actual consumer confusion has been convincingly demonstrated (see *infra*), the marketplace itself has concluded that the marks are similar. This factor strongly militates in favor of finding likelihood of confusion.

*3 & 4. The parties' products are functionally identical, and their retail markets are coextensive*

According to testimony in the record, the parties' Cajun seasonings are blended by the same manufacturer, Targil of Opelousas.[41] Their trade channels are virtually the same: grocery stores, markets and restaurants in Louisiana and (for Plaintiff) around the southeastern United States.[42] As undersigned counsel has acknowledged at hearing[43], the source identification

---

[41] Rec. Doc. 39, pp. 37-39.
[42] Rec. Doc. 39, p. 54.
[43] Exhibit B, p. 12.

(through trademarks) and not the distinctions among the products themselves are what set Plaintiff, Defendants and their other competitors apart.

When Plaintiff's and Defendants' products find themselves in the same retail outlet, which they very often do, merchants frequently place them side by side, since the connection between their names is so self-evident.[44] More than once, Plaintiff has learned, retail merchants themselves have been confused by the similarity of the marks and have informed customers that they are indeed from the same source.[45]

While there are some differences in the recipes and blending processes Targil uses for Plaintiff's and Defendants' products, there is no claim in this suit against imitation of recipes or ingredients. The primary differentiation between the parties' products, like those of their other competitors, is through their proprietary marks and packaging.

Because the parties' products are (despite some differences in flavor) functionally identical, and their retail markets are coextensive, these third and fourth "digits of confusion" strongly favor likelihood of confusion.

*5. No evidence is of record concerning advertising media employed by Defendants*

While Tony Walker has testified[46] that Plaintiff employs print media, radio and television advertisements, food shows and exhibitions in promotion of its products, the only promotional investments Defendants have used are in-store demonstrations.[47] Were Defendants to make significant promotional investments in their products, presumably they would employ outlets similar to those Plaintiff uses; but the record indicates that is not yet occurring.

---

[44] See Exhibit F.
[45] See Exhibit G and Rec. Doc. 39, p. 30.
[46] Rec. Doc. 39, p. 9.
[47] Rec. Doc. 39, pp. 68-72; 73-79; 89.

Since Defendants could, but do not, employ significant advertising media overlapping with Plaintiff's promotional efforts, this digit of confusion is of equivocal value. However, in the event Defendants do employ promotional advertising, it is very likely they would use the same traditional avenues as Plaintiff uses now: print media, radio and television.

### 6. Defendant Kirby Falcon's claim to ignorance of the "Slap Ya Mama" mark is highly suspect

Intent of the defendant is one of the more important factors considered in determining likelihood of confusion[48], and the only evidence in Mr. Falcon's favor concerning "good faith" is Mr. Falcon's own testimony. "Unsupported, self-serving testimony is not substantial evidence,"[49] and Mr. Falcon's testimony is not just unsupported – it is *contradicted* by the testimony of non-party witnesses.

According to Mr. Falcon, in the midst of "research and development" for his seasoning, he thought up the name "Punch Ya Daddy" while unaware of "Slap Ya Mama"'s existence.[50] According to Michelle Boudwin's testimony[51], though, Mr. Falcon actually asked her in early 2009 (before "Punch Ya Daddy" went on sale) how Walker & Sons marketed their product – after she told him her family produced "Slap Ya Mama."[52]

And it is clear that Mr. Falcon knew, before he sold his first can of "Punch Ya Daddy," that there was a "very good likelihood" of consumer confusion: his own packer and distributor, Targil, asked him point-blank whether he seriously intended to use such an obvious facsimile of

---

[48] *Westchester, supra.*
[49] *Comfort Trane Air Conditioning C. v. Trane Co.*, 592 F.2d 1373, 1383 (C.A.5, 1979).
[50] Rec. Doc. 39, p. 83.
[51] Ms. Boudwin testified that she is Jennifer Walker's first cousin, but she did not and had never worked for or with the Walkers.
[52] Rec. Doc. 39, p. 66-67.

the "Slap Ya Mama" label.[53] According to Targil's Quenton Guilbeaux, Mr. Falcon at that time *already* knew his label could cause confusion, and had already sought legal advice on the subject.[54]

According to Mr. Falcon, though, that conversation between him and Mr. Guilbeaux never happened, and Mr. Guilbeaux – a non-party witness under subpoena – baldly lied in open court.[55]

As this Court observed, "it's a heck of a coincidence that [Mr. Falcon has] "Slap Ya Mama" and "Punch Ya Daddy" without anybody knowing that it exists."[56] Indeed. Taken as a whole, the veracity of Mr. Falcon's testimony was, at best, questionable.

"If the defendant acted in good faith, then this digit of confusion becomes a nonfactor in the likelihood-of-confusion analysis," *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 203 (C.A.5, 1998). But evidence of intent to cause, or take advantage of, consumer confusion can *alone* be "sufficient to justify the inference that there is confusing similarity." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (C.A.5, 1980).

What evidence is of record as to Defendants' intent – direct contradiction of Mr. Falcon's testimony by two non-party witnesses – suggests at least the possibility of "intent to cause, or take advantage of, consumer confusion." If this factor weighs in any direction, it is against Mr. Falcon and in favor of Plaintiff.

*7. Evidence of actual consumer confusion is overwhelming and undeniable*

On May 4, 2011, a customer named Alesia Mayfield wrote to Walker & Sons via electronic mail to ask a question. Ms. Mayfield recounted that she had bought some Slap Ya

---

[53] Rec. Doc. 39, p. 40-42.
[54] Rec. Doc. 39, p. 41.
[55] Rec. Doc. 39, p. 87.
[56] Rec. Doc. 39, p. 109.

Mama at a Rouse's Market and had been told by her cashier about "Punch Ya Daddy, a new seasoning from your company." When Ms. Mayfield checked the Walkers' Web site[57], naturally, she found no "Punch Ya Daddy" for sale. "When," she concluded, "will it be available for order from your web site?"[58]

More than 40 years ago the Fifth Circuit Court of Appeals made clear that trademark infringement turns on, more than any other form of proof, actual consumer confusion:

> There can be no more positive or substantial proof of the likelihood of confusion than of proof of actual confusion. Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (C.A.5, 1971). *Accord, Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486 (C.A.5, 1992).

In this case, actual consumer confusion could not be more evident.

Hailey Soileau, who worked at Plaintiff's Ville Platte store, testified customers "were calling [Walker & Sons] actually to place an order for Punch Ya Daddy" (Rec. Doc. 39, p. 23). Sara Clark took phone calls from Plaintiff's customers who "just automatically thought that we did make [Punch Ya Daddy] and they wanted to place an order with me" (Rec. Doc. 39, p. 29). One customer Ms. Clark spoke with wanted to order *both* "Punch Ya Daddy" and "Slap Ya Mama" products from Plaintiff (Rec. Doc. 39, p. 29).

Brenda Bahr, too, Walker & Sons' office manager, testified that retailers had several times attempted to purchase "Punch Ya Daddy" products from Plaintiff, assuming it was part of the "Slap Ya Mama" line (Rec. Doc. 39, pp. 33-34). Ms. Bahr, in an affidavit executed January 28, 2011, testified that Plaintiff's employees kept a log of customer requests for "Punch Ya

---

[57] http://slapyamama.com/
[58] A copy of Ms. Mayfield's email is attached as Exhibit G.

Daddy," and that that log showed confusion in the marketplace as far afield as Georgia and Ohio (Rec. Doc. 44-4, pp. 1-2).

Plentiful and consistent evidence from the real-world marketplace shows that, unfortunately, confusion like Ms. Mayfield's is the rule, not the exception.

In January 2011, researchers at market-analysis firm Focus Research, Inc. conducted a Web panel survey to investigate possible consumer confusion between the "Slap Ya Mama" and "Punch Ya Daddy" word marks, logos and package design (both "old" and "new"). The affidavit of Focus Research's principal investigator, Kirsty Nunez, is attached as Exhibit H (pp. 1-4), and a summary presentation of the results forms the remainder of Exhibit H (pp. 5-40).

Focus Research's survey design was guided by industry standards for valid and reliable quantitative research, as well as by the Federal Judicial Center's *Reference Guide on Survey Research*.[59] Ms. Nunez has decades of experience in consumer-opinion research and two graduate degrees in related fields. The survey was narrowly targeted to explore questions at the heart of "actual confusion," like confusion as to the source of the parties' products. The survey carefully included an appropriate age, economic, geographic and household-role demographic so that its results could be reliably extrapolated to the larger marketplace.

Since the survey's results speak for themselves (and they are packaged in easy-to-understand graphs), Plaintiff will not recite all of them in pleadings. Ms. Nunez's affidavit mentions the essential highlights: both Defendants' "old" and "new" labels show significant levels of actual consumer confusion as to source – for each, more than **one-third** of consumers misattributed the products to the same source.

For the parties' respective product logos, the results are even stronger: around **half** of respondents thought products with the logos tested came from the same source.

---

[59] Available at http://www.fjc.gov/public/pdf.nsf/lookup/8.sur_res.pdf/$File/8.sur_res.pdf

Finally, consumer confusion in response to the word marks "Slap Ya Mama" and "Punch Ya Daddy" alone was strongest of all: **two-thirds** of the marketplace believes, on observation of the word marks alone, that the products originate from the same source.

According to a recent decision by the district court for the Northern District of Texas, "[t]hese percentages are within the range accepted by courts - **generally 15 percent** - in assessing likelihood of confusion." *Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.*, 616 F.Supp.2d 622, 641 (N.D.Tex., 2009) (emphasis added).

Other federal courts have likewise concluded that consumer confusion must be around "**sixteen percent**[60]," "**ten** to **twelve** percent[61]" and "**ten** percent[62]" (emphases added) in order for a survey to demonstrate a likelihood of confusion.

Actual consumer confusion indicated by Focus Research's survey is *far* in excess of these thresholds. These results are not equivocal: they are overpowering. Plaintiff's burden, according to *World Carpets* and *Moore Business Forms, supra*, is merely to show "very little proof" of actual confusion.

The evidence far exceeds that burden. Facts on record overwhelmingly establish that actual confusion, the strongest indicator of likelihood of confusion, in turn the ultimate issue in this case, is widespread and undeniable.


*8. Low-priced, commodity items like seasonings are highly susceptible to consumer confusion*

According to the Fifth Circuit, "confusion is more likely… if the products in question are 'impulse' items or are inexpensive," *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253,

---

[60] *Teaching Co. Ltd. Partnership v. Unapix Entertainment, Inc.*, 87 F.Supp.2d 567 (E.D.Va., 2000).
[61] *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 at FN15 (C.A. 4, 1996), citing *Henri's Food Products Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 358 (C.A. 7, 1983).
[62] *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 400 (C.A. 8, 1987).

1260 (C.A.5, 1989)(internal quotation omitted). In *Blue Bell*, the goods at issue were medical carts, "a major piece of equipment bought by medical professionals who are likely to exercise a high degree of care in purchasing them." Id. A high degree of care exercised for a high-priced item can reduce the likelihood of confusion because the consumer can be expected to examine competing products closely.

In contrast, commodity products like store-bought groceries are more easily confused. "In convenience stores, the bottles typically stand in a group in a refrigerated case. In supermarkets, many bottles are often "jumbled" together in a produce bin." *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 433 (C.A.5, 1984), *abrogated on other grounds by TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001).

The products at issue – food seasonings sold in similarly-sized canisters, often side-by-side in store displays – are much more akin to the small lemon-juice bottles discussed in *Sicilia* than to the high-priced, high-care medical goods described in *Blue Bell*. This final factor indicates a high likelihood of confusion among the parties' products.

## G. Remedies

As recited in its Motion, Plaintiff seeks summary judgment on the merits of its claims

for:

- Permanent injunction against use in commerce of the trade name "Punch Ya Daddy," and its associated packaging and labeling, on Defendants' products;
- Cancellation of the "Punch Ya Daddy" mark from the Principal Register by the Patent and Trademark Office; and
- Money judgment for Plaintiff's costs, damages incurred, profits unrealized, and reasonable attorney's fees,

with the amounts of the latter to be demonstrated later in this litigation.

With Plaintiff's showing of, first, protectable interest in the "Slap Ya Mama" mark; and, second, infringement by Defendants, recovery of provable damages becomes available. Because there is yet no evidence of record demonstrating the quantum of those damages, Plaintiff intends to substantiate them in the future, and their quantum is not now before the Court.

As to cancellation of Defendants' mark, the Lanham Act specifically empowers the courts to "determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. 1119.

Plaintiff, it should be noted, has separate and parallel claims for Defendants' infringement under the laws of the United States and of the state of Louisiana. Plaintiff's initial choice of a state-court forum was permitted by the well-established principle of concurrent state-court jurisdiction: "state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication." *Gulf Offshore Oil Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78 (1981).

Now, all the Walkers' claims having been removed to this Court, they may all be tried together in the exercise of the Court's pendent jurisdiction: "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

Infringement and dilution of service marks is an area of the law where state and federal concurrent claims coexist peacefully: since the "Lanham Act contemplates a continuing role for state law in trademark protection," "Pre-emption, Extraterritoriality, and the Problem of State Anti-dilution Laws," 67 Tul.L.Rev. 1, 11 (November 1992), the "Supreme Court has shown extreme reluctance to find state trade regulation pre-empted." *See, e.g., Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974) (state trade-secret law not in conflict with, and not pre-empted by, federal patent law); *Golden Door, Inc. v. Odisho*, 646 F.2d 347 (C.A. 9, 1980) (state may enforce remedies supplemental to, and more extensive than, federal trademark protections).

Although "the requirements for trademark infringement and unfair trade practices under [Louisiana] law mirror those of the Lanham Act," *Prudhomme v. Procter & Gamble Co.*, 800 F.Supp. 390, 395 (E.D.La., 1992), Plaintiff's state and federal claims for damages, permanent injunction and other relief are separate and separately actionable. "[S]tate causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law," *California v. ARC America Corp.*, 490 U.S. 93, 105 (1989).

Under Louisiana law, "the primary issues in a trade name infringement case are: (1) whether the party seeking the injunction has a protectable proprietary right in the name it seeks to exclude others from using; and (2) if so, whether there has been an infringement of that right."

*Chinchuba Institute v. St. Tammany Parish School Board*, 95-0419 (La.App. 1st Cir. 11/9/95), 664 So.2d 1230, 1233. Thus Louisiana law tests trademark protections under virtually the same terms as *American Rice* requires[63] – and Plaintiff respectfully submits that having demonstrated its federal cause of action, state relief follows.

Having alleged in their Complaint violation by Defendants of Louisiana's Unfair Trade Practices and Consumer Protection Law (UTPCPL), which prohibits "unfair or deceptive method[s], act[s], or practice[s]," Plaintiff is entitled to "reasonable attorney fees and costs" upon a showing of that law's violation. LSA-R.S. 51:1409. Given the contradictions to defendant Kirby Falcon's testimony by two non-party witnesses, and the blatant imitation of Plaintiff's word mark and labeling appearance by Defendants, Plaintiff respectfully submits that the evidence on record demonstrates just such "unfair or deceptive methods."

Finally, concerning permanent injunction against Defendants' infringing mark, the federal sovereign, like the state, confers on Plaintiff the right to injunctive relief "against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment," 15 U.S.C. 1125(c)(1).[64] And as the district court for the Eastern District has pointed out, what satisfies the state-law requirements of Title 51 satisfies the Lanham Act as well. *Prudhomme v. Procter & Gamble Co.*, 800 F.Supp. 390, 395 (E.D.La., 1992).

---

[63] *See also Gulf Coast Bank v. Gulf Coast Bank & Trust Co.*, 94-2203 (La. 4/10/95), 652 So.2d 1306.
[64] That statute provides the model for Louisiana's anti-dilution provision, LSA-R.S. 51:223.1.

### H. Conclusion

"[W]hile little proof of actual confusion will support a finding of likelihood of confusion, an overwhelming amount of proof is necessary to refute such proof." *Moore Business Forms, supra*, 960 F.2d at 491.

This Court has before it, both already in the record and newly supplied, evidence of actual confusion that is comprehensive and compelling. Since virtually the day Kirby Falcon commenced selling "Punch Ya Daddy" products, Defendants have continually misled consumers, retailers and distributors alike into believing that they are Walker & Sons products.

As Plaintiff has discussed above, that confusion is aimed at a mark that is both presumptively entitled to protection – by virtue of its federal registration – and in which Plaintiff has a conclusively protectable ownership interest.

For every mistaken customer who actually attempts to purchase infringing products from Plaintiff – and testimony shows there have been many – there are many more who simply, and mistakenly, purchase "Punch Ya Daddy" because of its unmistakable resemblance to "Slap Ya Mama."

This Court need not even rely on personal-knowledge testimony from fact witnesses – although there is plenty of that. Market research, in addition, discloses that **most of the consumer marketplace** believes, based on the names "Punch Ya Daddy" and "Slap Ya Mama" alone, that the products have the same source.

There is, in fact, an "overwhelming amount of proof" before the Court[65] – and it demonstrates extensive actual confusion by a huge proportion of the market; a strong mark meriting protection; highly suspect intent on the part of Mr. Falcon; virtual identity of sales outlets and customer bases; products particularly susceptible by virtue of a low degree of care to

---

[65] *Moore Business Forms, supra.*

mistaken identification; and close similarity of marks that deceive between one-third and two-thirds of the entire customer demographic into thinking that the products have the same origin.

No matter the relative weight of the *American Rice* factors, nearly all are satisfied – conclusively satisfied – in Plaintiff's favor. There is no genuine issue of material fact to suggest otherwise.

The Motion should be granted.


Respectfully submitted,

/s/Ryan M. Goudelocke_____
William W. Stagg, T.A. (No. 1613)
Ryan M. Goudelocke (No. 30525)
Durio, McGoffin, Stagg & Ackermann
 220 Heymann Boulevard, Lafayette, LA  70503
Post Office Box 51308, Lafayette, LA  70505
Telephone: (337) 233-0300
Fax: (337) 233-0694
*Counsel for Walker & Sons, Inc.*


## CERTIFICATE OF SERVICE

I certify that I have, this _____ day of June, 2011, provided all parties with a copy of the foregoing pleading by means of the Western District's CM/ECF electronic filing system.


_____/s/Ryan M. Goudelocke_____
**Ryan M. Goudelocke**