UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WALKER & SONS, INC. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO.  09-01822 |
| | * | |
| PUNCH YA DADDY, L.L.C. AND | * | JUDGE:  Richard T. Haik |
| KIRBY FALCON | * | MAGISTRATE JUDGE: |
| | * | C. Michael Hill |

* * * * * * * * * * * * * *

### DEFENDANTS' MEMORANDUM
### IN SUPPORT OF MOTION IN LIMINE

**MAY IT PLEASE THE COURT:**

This memorandum in submitted on behalf of Punch Ya Daddy, L.L.C. and Kirby Falcon in support of their Motion in.

### INTRODUCTION

Defendants anticipate that plaintiff will attempt to either introduce improper and irrelevant evidence at the trial of this matter.  As a result, defendants seek pre-trial rulings excluding the following matters:

1. Evidence, reports and/or testimony from Focus Research and/or by Focus Research's investigator, Kirsty Nunez.

2. Audio outtakes of people interviewed by Focus Research and/or Kristy Nunez.

## ARGUMENT

**1.     Testimony by Focus Research and/or Kirsty Nunez should be excluded from trial of this matter.**

Focus Research performed a survey to support plaintiff's argument that there is actual consumer confusion between its and defendants' marks. Kirsty Nunez is Focus Research's investigator. Ms. Nunez has never testified in court as an expert witness, nor had she ever prepared a survey for litigation.[1] Defendants retained Gabriel M. Gelb, Senior Consultant with Gelb Consulting, Group, Inc., an expert in the field of consumer surveying, to evaluate the methodology of the Focus Research survey and its reliability as an indicator of possible consumer confusion between plaintiff's and defendants' marks. Mr. Gelb has extensive experience in preparation of consumer surveys for litigation.

In that regard, Mr. Gelb reviewed the affidavit of Kirsty Nunez and the survey conducted by Focus Research and concluded that the survey does not provide a reliable assessment of whether any consumer confusion exists and, further found the survey was not performed in accordance with sound, objective surveying principals.[2]

Specifically, Mr. Gelb confirms that Focus Research did not select the proper sample group (consumers of Cajun seasoning) but purported to sample only "grocery shoppers." As a

---

[1] Summary of opinions, Exhibit "A," and Resume of Kirsty Nunez, Exhibit "B," attached hereto.
[2] See Affidavit of Gabriel M. Gelb, Exhibit "C" and Expert Report of Gabriel M. Gelb attached thereto.

result, the Focus Research survey does not represent responses of consumers of Cajun seasoning products and its results cannot be imputed upon that population of consumers.[3]

More troublesome, however, is that Focus Research deviated from standard surveying practices by presenting leading questions to the grocery shoppers surveyed and by failing to provide any control group to test the reliability of the survey results. As pointed out by Mr. Gelb, the Focus Research survey questions present only plaintiff's and defendants' products to the survey taker and inquire as to "if the product names are similar." Such methods imply a result to the survey taker and run afoul of the accepted standards for consumer surveys in the context of infringement litigation.[4]

The survey results are further tainted by the lack of any control questions in the survey. Specifically, the only questions in the survey compared plaintiff's and defendants' products. To meet accepted standards for consumer surveying, the survey should have compared plaintiff's products to similar products other than defendants'. The results of control questions allow the researcher to adjust the survey results and determine the "net confusion rate," a process that corrects for error inherent in all surveys of this type.[5] As a result of Focus Research's failure in this regard, combined with its failure to sample the proper population of Cajun seasoning

---

[3] *Id* at p. 7 and 10.
[4] *Id* at p. 8.
[5] *Id.* at p. 9.

consumers, and extensive utilization of leading and suggestive questions, all as discussed in the report of Mr. Gelb, the survey offers no support to plaintiff's argument.

In assessing the validity of a survey, the Court should look to two basic factors: (1) the manner of conducting the survey, including, especially, the adequacy of the universe (population to be sampled); and (2) the way in which participants are questioned. *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F. 3d 477, 487 ( 5th Cir. 2004) (citing *Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.,* 628 F.2d 500, (5th Cir.1980)).

The sample of grocery shoppers selected by Focus Research eliminates any probative value of the survey's results. For a survey to be valid, "the persons interviewed must adequately represent the opinions which are relevant to the litigation." *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 264 (5th Cir.1980). In an infringement action, "the appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services." *Id.* Here, as stated by Mr. Gelb, the appropriate population is consumers of Cajun seasoning products, not simply grocery shoppers. Secondly, the survey's leading and suggestive questions are directed at soliciting a response from survey takers favorable to plaintiff. One example of the leading and suggestive nature of the questioning is:

> 7. Using a scale of 1 to 5 where "1" means "strongly disagree" and "5" means "strongly agree," please indicate the extent to which you agree with the following statements about the names "<u>Slay Ya Mama</u>" and "<u>Punch Ya Daddy</u>."
>
> 1   The product names are similar.
> 2   The product names indicate that the products come from the same family of products.

> 3  The product names indicate that the products are made by the same company.
> 4  I would expect to see items with these names side-by-side on the grocery store shelf.
> 5  If selecting a product based on name alone, I would be confused about the difference between these two products.

This question, and others in the survey, are leading as they suggest to the survey respondent that the product names are similar and they come from the same source.

Lastly, Focus Research failed to implement the required controls to correct inherent errors in surveying. Thus, the Focus Research survey fails in both critical factors considered by the Courts in evaluating the probative value of consumer survey results. Accordingly, the Court should give no weight to the survey of Focus Research, and plaintiffs should not be allowed to introduce testimony, reports and/or any other evidence regarding said survey at trial.

**2.   Audio outtakes of people interviewed by Focus Research and/or Kirsty Nunez should be excluded from evidence at trial.**

Defendants anticipate that plaintiff will try to introduce into evidence audio outtakes of people interviewed during the survey taken by Focus Research and/or Kirsty Nunez. This evidence is being offered solely for the purpose of supporting Focus Research and/or Kirsty Nunez's assertions as to the validity of their market research and analysis and, thus, supporting plaintiff's argument that there is consumer confusion between its and defendants' marks. This evidence is clearly hearsay and not admissible, in that these people will not be available to testify

at court.

Federal Rules of Evidence Rule 801(c) defines hearsay as:

"Hearsay" means a statement that:

(1)  the declarant does not make while testifying at the current trial or hearing; and

(2)  a party offers in evidence to prove the truth of the matter asserted in the statement.

Under Federal Rules of Evidence Rule 802, hearsay is not admissible unless a federal statute, rules of evidence or other rules prescribed by the Supreme Court provide otherwise. Defendants assert that there are no statutes or rules which would make these audio outtakes, which are clearly hearsay, admissible and, therefore, it is respectfully suggested that the Court should not allow the introduction of these audio outtakes at trial.

## CONCLUSION

Defendants anticipate that plaintiff will offer into evidence in the trial of this matter, issues that are entirely improper, hearsay, have no probative value or are so highly prejudicial that they should be excluded.  Defendants request that the Court rule on these issues prior to trial, and exclude the introduction of this evidence, in order to avoid undue prejudice or efforts by the

plaintiff to mislead the Court and the jury.

                                          Respectfully submitted;

                                          LAW OFFICE OF CHRISTOPHER H. RIVIERE
                                          A Professional Law Corporation

                                          <u>/s/ Christopher H. Riviere</u>
                                          CHRISTOPHER H. RIVIERE (#11297)
                                          ERIC L. TROSCLAIR (#30099)
                                          103 West Third Street
                                          Post Office Box 670
                                          Thibodaux, Louisiana  70302-0670
                                          Telephone (985) 447-7440
                                          Facsimile: (985) 447-3233

## **<u>CERTIFICATE</u>**

       I hereby certify that a copy of the above and foregoing pleading has been electronically filed with the Clerk of Court using the CM/ECF system, this 27th day of December, 2011.

                                                       <u>/s/ Christopher H. Riviere</u>
                                                       CHRISTOPHER H. RIVIERE